JAMES L. KERR AND GRACE E. KERR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kerr v. Commissioner
Docket No. 32253-85.
United States Tax Court
T.C. Memo 1987-470; 1987 Tax Ct. Memo LEXIS 466; 54 T.C.M. (CCH) 576; T.C.M. (RIA) 87470; September 17, 1987. *466 Petitioners have conceded that their family trust should not be recognized for income tax purposes. As to additions to tax determined by respondent, it is Held: That petitioners are liable for additions to tax under secs. 6653(a)(1) and (2), 6651(a), and 6621(c), I.R.C. 1954. John K. Ross, for the petitioners. Margaret K. Hebert, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes and additions to tax for 1981 and 1982: Addition
Sec. 6653(a)(1),
Sec. 6653(a)(2),
Sec. 6651(a),
Year
Deficiency
I.R.C. 1954
I.R.C. 1954
I.R.C. 1954
1981
$ 19,046
$ 952
50% of the interest
$ 2,985
due on $ 19,046
1982
$ 15,214
$ 761
50% of the interest
--
due on $ 155,214
In addition, respondent determined that petitioners are liable for an addition to tax for 1981 and 1982 under section 6621(d). [1] *467 After concessions, the only issues to be resolved are whether petitioners are liable for the determined additions to tax under sections 6653(a)(1) and (2), 6651(a), and 6621(c). FINDINGS OF FACT At the time the petition was filed, petitioners James L. Kerr and Grace E. Kerr were residents of Phoenix, Arizona. Mr. Kerr was an electrical engineer employed by Honeywell Information Systems. He graduated from Princeton University in Princeton, New Jersey, with a Bachelor of Science degree in Electrical Engineering and from Arizona State University in Tempe, Arizona, with a Master of Science degree in Engineering. Mr. Kerr has also taken engineering courses at Brooklyn Polytechnic Institute in New York and Johns Hopkins University in Maryland. Mrs. Kerr has a Bachelor of Arts degree in history from Mt. Holyoke College in Massachusetts. In late 1977 or early 1978, petitioners attended a seminar in Tempe, Arizona, which was conducted by John Matonis (Matonis), an attorney licensed to practice in Washington, D.C., *468 and Barbara Hutchinson (Hutchinson), a tax law researcher. Matonis and Hutchinson were associated with an organization known as Estate Guardian Educational Trust (EGET). Through this organization they promoted and sold family trust packages. At the seminar Matonis lectured about the creation and the advantages of the family trust. In addition, petitioners received a booklet from EGET which described EGET and the trust package. At some point petitioners also received a memorandum from Matonis which discussed the benefits of transferring wages to an EGET trust. Relying upon this EGET literature and the lectured advice of Matonis, petitioners paid $ 4,500 to EGET to acquire the trust package. Pursuant to this trust package, petitioners, under the direction of EGET's people, purportedly transferred Mr. Kerr's wages, their family residence, and other personal property into a family trust arrangement. After creating their trust, petitioners continued to use and enjoy these items just as they had prior to the creation of the trust. Petitioners have conceded that their trust was invalid for Federal income tax purposes. In deciding to purchase this package, petitioners relied solely upon *469 the advice of Matonis. Petitioners never met with Matonis on a one-to-one basis. They were aware that Matonis was promoting and selling a trust package through his lectures. Petitioners never made any attempt to verify Matonis' credentials or to consult or hire an independent party to review the validity of their trust. Hutchinson prepared petitioners' 1981 income tax return and her associate prepared their 1982 return. In 1981, Hutchinson completed Mr. Kerr's Form W-4 and advised him to claim 41 personal exemptions. Petitioners followed her advice knowing that they were not entitled to 41 exemptions as claimed. Petitioners' 1981 Federal income tax return was due on April 15, 1982, but was not received by the Internal Revenue Service (IRS) until June 22, 1982. No extensions were filed with respect to petitioners' 1981 tax year. OPINION In the notice of deficiency respondent determined additions to tax under section 6651(a)(1) for untimely filing of return, section 6653(a)(1) and (2) for underpayment of taxes due to negligence or intentional disregard of rules, and under section 6621(c) for engaging in a tax-motivated transaction. Petitioners have conceded that their trust *470 was invalid for income tax purposes. We are left only with the dispute as to petitioners' liability with respect to the additions to tax. The burden of proof rests with petitioners for all of the controverted additions to tax. Welch v. Helvering,290 U.S. 111 (1933). 1. Section 6653(a)(1) and (2)
Section 6653(a)(1)[2] *471 provides for the imposition of a 5-percent addition to tax if any part of the underpayment of tax is due to negligence or intentional disregard of the revenue laws. Section 6653(a)(2), [3] effective for both petitioners' 1981 and 1982 tax years, imposes a further addition to tax of 50 percent of the interest payable on the portion of the underpayment attributable to negligence. Petitioners contend that they relied upon legal advice and are, therefore, not negligent. While a taxpayer may in good faith rely upon the advice of a qualified accountant or attorney, this reliance must be reasonable. Conlorez Corp. v. Commissioner,51 T.C. 467 (1968). With respect to their family trust, petitioners relied solely upon the representations of Matonis and Hutchinson; [4] however, their reliance was not reasonable and was not in good faith. *472 Hutchinson was neither an attorney nor an accountant. Matonis was an attorney but he was an attorney promoting a trust package through EGET. Matonis was an interested party who stood to profit from the sale of trust packages; [5] he was not independently hired by petitioners in an advisory capacity to give an unbiased opinion as to the validity of petitioners' trust. Petitioners *473 testified that, five years prior to organizing their family trust, they received advice from their close personal friend, attorney Paul Vestal. However, since this advice did not specifically pertain to the EGET trust package, and petitioners did not hire Vestal on a professional basis, their reliance on Vestal was unreasonable. Petitioners attended an EGET seminar where Matonis lectured on the EGET trust. Additionally, they received a memorandum from Matonis on the EGET trust. The memorandum was directed to all individuals who were salaried employees. Both the lecture and the memorandum were sales techniques employed by Matonis to sell the trust. No reasonable person would have relied upon this type of advice without obtaining independent confirmation and verification. Petitioners made no effort to verify the credentials of Matonis or to hire an independent party to review the validity of the trust. Thus, their reliance on Matonis in this context represented negligence. [6] *474 Moreover, we find it unreasonable that petitioners would rely upon individuals who advised them to file false withholding statements with Mr. Kerr's employer. Relying upon Hutchinson's advice, Mr. Kerr claimed 41 personal exemptions to which he was not entitled. Both petitioners are well-educated individuals who understood their obligation to file accurate withholding statements. Even though they may have known little about the taxation of family trusts, we think petitioners knew that the grossly excessive tax benefits claimed on their returns were too good to be true. If they were not so informed, they were negligent in accepting the advice of the promoters of this family *475 trust without further effort to obtain confirmation of the extraordinarily favorable tax results from an independent source. [7]
In summary, we agree with respondent that if petitioners had acted in good faith they would have sought the advice of a competent independent third party. Petitioners have failed to show that they made innocent or unknowing mistakes in a good faith attempt to comply with statutory duties; therefore, petitioners have not carried their burden of proving that section 6653(a)(1) and (2) additions to tax are not applicable. 2. Section 6651(a)[8] *476 Petitioners have not established that their failure to file a timely 1981 tax return was due to reasonable cause. The return was due on April 15, 1982, but was not received by the IRS until June 22, 1982. Mr. Kerr testified that prior to the due date in 1982, representatives of EGET prepared petitioners' tax return and mailed it to petitioners to sign around April 14, 1982. Petitioners found errors in the return and mailed it back to EGET within 1 or 2 days for correction. Petitioners received the corrected return on June 14, 1982, and the IRS officially received the return on June 22, 1982. Mr. Kerr claims that the called Hutchinson four or five times asking her to prepare the necessary extensions. No extensions were filed on petitioners' behalf. We recognize petitioners relied upon representatives of EGET to file a timely return; however, it has been established that reliance upon another to prepare or file a return known to be due does not constitute reasonable cause for avoiding the section 6651(a) addition to tax. United States v. Boyle,469 U.S. 1129 (1985). *477 After all, the due date of the annual income tax return is a highly publicized event. Thus, we sustain the Commissioner's determination of the section 6651(a)(1) addition to tax for 1981. 3. Additional Interest Under Section 6621(c)
Respondent determined that petitioners are liable for the increased interest imposed by section 6621(c). [9] *478 *479 That section provides for an increase in the interest rate payable under section 6601 with respect to "any substantial underpayment" (i.e., an underpayment exceeding $ 1,000), which is attributable to one or more "tax motivated transactions." Section 6621(c)(3)(A)(v) defines a tax motivated transaction to include "any sham or fraudulent transaction." Section 6621(c) is effective as to interest accruing after December 31, 1984, even though the transaction was entered into prior the enactment of the section. Zirker v. Commissioner,87 T.C. 970, 981-982 (1986); Solowiejczyk v. Commissioner,85 T.C. 552, 555 (1985), affd. without published opinion 795 F.2d 1005 (2d Cir. 1986); Johnson v. Commissioner,85 T.C. 469, 482 (1985). We think petitioners' family trust was a "sham or fraudulent transaction" within the meaning of section 6621(c). Petitioners purportedly transferred Mr. Kerr's wages, their family residence, and other personal property into the family trust but retained control over these items just as they had prior to the creation of the trust. Thus, petitioners attempted to avoid paying taxes through the family trust. We are convinced that petitioners knew they could not so easily circumvent the tax laws in this manner as surely as they knew they were not entitled to 41 exemptions. Petitioners argue, however, that they entered this trust in order to preserve their assets from high probate costs. This is an adequately stated purpose; however, carrying out such a purpose did not require them to flaunt the income tax laws. Mr. Kerr testified that he was influenced "to a great deal" in his decision to form the trust by a memorandum written by Matonis; *480 however, this memorandum discusses only the Federal income tax benefits of assigning one's wages to an EGET family trust and makes no mention of probate costs. Petitioners have failed to show that their trust was not a sham or fraudulent transaction. As we view the evidence, the predominant purpose behind the creation of petitioners' family trust was tax avoidance in a manner in which has no possible authorization under the tax laws. [10] *481 Therefore, section 6621(c) requires the imposition of this addition to tax on the ground that the family trust was a "sham or fraudulent transaction." To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, in the form effective in this case unless otherwise noted. The Tax Reform Act of 1986, Pub. L. 99-514, sec. 1511(c), 100 Stat. 2744, redesignated sec. 6621(d) as sec. 6621(c); the Act also altered the definition of "tax motivated transaction" to include "any sham or fraudulent transaction" effective for interest accruing after Dec. 31, 1984. We will hereinafter refer to this section as sec. 6621(c)↩. 2. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income, Gift, or Windfall Profit Taxes. -- (1) In general. -- If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A, by chapter 12 of subtitle B or by chapter 45 (relating to windfall profit tax) is due to negligence or intentional disregard of rules or regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment. 3. Sec. 6653(a)(2) provides as follows: (2) Additional amount for portion attributable to negligence, etc. -- There shall be added to the tax (in addition to the amount determined under paragraph (1)) an amount equal to 50 percent of the interest payable under section 6601 -- (A) with respect to the portion of the underpayment described in paragraph (1) which is attributable to the negligence or intentional disregard referred to in paragraph (1), and (B) for the period beginning on the last date prescribed by law for payment of such underpayment (determined without regard to any extension) and ending on the date of the assessment of the tax(or, if earlier, the date of the payment of the tax). ↩
4. In 1983, the United States District Court for the Southern District of California found that Hutchinson had engaged in conduct subject to penalty under sec. 6700 in connection with her promotion of EGET and enjoined her from taking any action in furtherance of this promotion. United States v. Hutchinson, an unreported case ( S.D.Cal. 1983, 83 USTC par. 922, 51 AFTR2d 83↩-1141). 5. In Metcalf v. Commissioner,T.C. Memo. 1985-487, the taxpayer, like petitioners, paid EGET to establish a family trust for him. Finding the taxpayer negligent in accepting the rosy promises of interested persons, the Court concluded: Surely, where such extraordinary favorable tax results are promised by interested persons, ordinary prudence would seem to call for further effort to obtain confirmation from an independent source. * * * ↩
6. Respondent submits that there is no distinction between petitioners here and the taxpayers in Carlin v. Commissioner,T.C. Memo. 1983-522. In Carlin v. Commissioner, the taxpayers relied upon the advice of Matonis and Hutchinson in forming a trust. Carlin was informed that Matonis was an attorney. The Court concluded that the taxpayers were negligent, stating: * * * Dr. Carlin entered into the trust without getting any advice from an attorney or an accountant independent of the individuals who first "sold" him the materials to form the trust. The type of advice which petitioner received is not the type which would be relied on by a reasonable person of Dr. Carlin's education in making a decision. * * * ↩
7. Metcalf v. Commissioner,T.C. Memo. 1985-487↩. 8. Sec. 6651(a)(1) provides in pertinent part as follows: (a) Addition to the Tax. -- In the case of failure -- (1) to file any return required under authority of subchapter A of chapter 61 * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate. 9. SEC. 6621. DETERMINATION OF RATE OF INTEREST. (c) Interest on Substantial Underpayments Attributable to Tax Motivated Transactions. -- (1) In general. -- In the case of interest payable under section 6601 with respect to any substantial underpayment attributable to tax motivated transactions, the annual rate of interest established under this section shall be 120 percent of the underpayment rate established under this subsection. (2) Substantial underpayment attributable to tax motivated transactions. -- For purposes of this subsection, the term "substantial underpayment attributable to tax motivated transactions" means any underpayment of taxes imposed by subtitle A for any taxable year which is attributable to 1 or more tax motivated transactions if the amount of the underpayment for such year so attributable exceeds $ 1,000. * * * Sec. 6621(c)(3) defines tax motivated transactions as follows, for interest accruing after Dec. 31, 1984: (3) Tax motivated transactions. -- (A) In general. -- For purposes of this subsection, the term "tax motivated transaction" means -- (i) any valuation overstatement (within the meaning of section 6659(c)), (ii) any loss disallowed by reason of section 465(a) and any credit disallowed under section 46(c)(8), (iii) any straddle (as defined in section 1092(c) without regard to subsections (d) and (e) of section 1092), and (iv) any use of an accounting method specified in regulations prescribed by the Secretary as a use which may result in a substantial distortion of income for any period, and (v) any sham or fraudulent transaction. ↩
10. In recent years so-called family trusts have been the subject of numerous tax cases. In such cases, trusts like the instant one have been denied income tax effect on the ground that the trusts were shams, Holman v. United States,728 F.2d 462, 465 (10th Cir. 1984); were grantor trusts under secs. 671-677, Vnuk v. Commissioner,621 F.2d 1318, 1321 (8th Cir. 1980), affg. a Memorandum Opinion of this Court; Hanson v. Commissioner,696 F.2d 1232, 1234 (9th Cir. 1983), affg. a Memorandum Opinion of this Court; or were merely assignments of income, Vnuk v. Commissioner,621 F.2d at 1320; Hanson v. Commissioner,696 F.2d at 1234. In United States v. Buttorff,761 F.2d 1056↩ (5th Cir. 1985), a promoter was enjoined from selling pure equity or family trust packages.